UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DERIC KING, | * * * * | |
| Plaintiff, | * | Civil Action No. 15-cv-14256-ADB |
| v. | * * | |
| DEPARTMENT OF CORRECTION, et al., | * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

December 8, 2016

BURROUGHS, D.J.

Deric King ("Plaintiff") brings an action, under 42 U.S.C. § 1983 and Massachusetts state law, against several officials currently or formerly employed by the Massachusetts Department of Correction in their official and individual capacities and the Massachusetts Partnership for Correctional Healthcare, alleging cruel and unusual punishment under the Eighth Amendment, a due process violation under the Fourteenth Amendment, and failure to protect under Massachusetts law. Amended Complaint ("Am. Cmpl.") [ECF No. 25]. Plaintiff seeks an injunction, compensatory damages, punitive damages, and reasonable attorney's fees and costs. Id.

Currently before the Court are Defendants Jeffrey Guerin and Carlos Goden's Motions to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [ECF No. 27], and for Failure to Comply with Court Order, [ECF No. 51]. For the reasons stated herein, the Motion to Dismiss the Amended Complaint [ECF No. 27] is

GRANTED IN PART AND DENIED IN PART with respect to Defendants Guerin and Goden. To the extent that Defendants also move to dismiss claims on behalf of parties who have not yet been served, *e.g.*, Douglas Bower, Stephanie Ericson, Luis Spencer, and Bruce Gelb, see [ECF Nos. 55, 56, 57, 58], the Motion is DENIED without prejudice. [1] Defendants Guerin and Goden's second Motion to Dismiss [ECF No. 51] is DENIED as moot.

## I.  BACKGROUND

### a.  Procedural Background

Plaintiff's first complaint was received by the clerk of court on December 31, 2015. [ECF No. 1]. The complaint is dated December 21, 2015. Id. Plaintiff represents that he placed it in the prison mailbox on December 21, 2015. [ECF No. 61 at 6]. Plaintiff's Amended Complaint was entered on June 17, 2016. [ECF No. 25].

On June 27, 2016, Defendants Carlos Goden and Jeffrey Guerin (the "Defendants") filed a motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), [ECF No. 27], and a memorandum of law in support, [ECF No. 28]. The Court granted Plaintiff's motion to extend his time to respond to the motion to dismiss until October 5, 2016. [ECF No. 49]. Plaintiff failed to meet the October 5, 2016 deadline. On October 14, 2016, Defendants filed a motion to dismiss the Amended Complaint for Plaintiff's failure to meet his own deadline. [ECF No. 51]. On October 17, 2016, the Court issued an order to show cause as to why the motion to dismiss should not be granted and gave Plaintiff until November 1, 2016 to respond. [ECF No. 52]. On October 31, 2016, Plaintiff filed an opposition to

---

[1] It is not completely clear from the Defendants' Motion to Dismiss [ECF No. 27] whether they bring the motion on behalf of certain defendants who have no yet been served, and if so, whether they are permitted to do so.

Defendants' second motion to dismiss. [ECF No. 62]. On November 1, 2016, Plaintiff finally filed an opposition to the first motion to dismiss. [ECF No. 61].

The Amended Complaint was served on Defendant Massachusetts Partnership for Correctional Healthcare, which is not a party to these motions. [ECF No. 54]. It appears that the US Marshal was unable to serve Defendants Douglas Bower, Stephanie Ericson, Luis Spencer, and Bruce Gelb. [ECF Nos. 55, 56, 57, 58].

### b.  Factual Background

The Amended Complaint [ECF No. 25] alleges as follows. Plaintiff was incarcerated at Souza Baranowski Correctional Center ("SBCC") at the time of the events described. Am. Compl. ¶ 3. Prisoners at SBCC are "screened" by Inner Perimeter Security and the Shift Commander in order to determine any gang affiliation or enemy separation issues, and segregated based on such issues. Am. Compl. ¶ 16. Sometime before December 24, 2012, prison guards searched the cell shared by Plaintiff and his cellmate, and claimed that they found contraband. Id.  ¶¶ 13–14. As a result, the Plaintiff was placed on "Awaiting Action" status. Id. ¶ 14. On December 24, 2012, the Plaintiff and his cellmate were moved from their cell in J-2 to cell number 10 in a disciplinary/transitional block, L-1. Id. ¶ 15.

Plaintiff is a "confirmed gang member" who is part of a "security threat group." Id. ¶ 17. Plaintiff alleges that he has been a confirmed gang member "since 2012." Id. Defendants Goden, Guerin, and Bower moved Plaintiff to an L-1 cell. Am. Compl. ¶ 18. Immediately upon his relocation to L-1, Plaintiff informed prison guards (John Doe #1 and John Doe #2) that his placement was problematic because rival gang members were located in surrounding cells. Id. ¶ 19. According to Plaintiff, members of this gang were known to attack "on sight," although it is not clear by whom this was known or how they might know this. Id. It is also unclear whether

3

the rival gang members were already in the cells when Plaintiff was relocated or whether they were relocated there sometime afterwards. The prison guards allegedly informed Plaintiff that Defendant Guerin had instructed them to place Plaintiff in this particular cell, and then said "[b]y the way, make it a good one, will you?" Id. ¶ 19. Plaintiff informed the prison guards that he and his cellmate had been placed on "Awaiting Action" status, which had not yet been rescinded. Id. ¶ 20. The prison guards promised they would check on it. Id. Plaintiff does not further explain what "Awaiting Action" status means.

At approximately 1:30 pm on December 24, 2012, minutes after being relocated, Plaintiff stepped out of his cell and was immediately attacked by four members of the rival gang, causing serious injuries to his back, neck, and hand. Id. ¶¶ 21, 22. Plaintiff alleges that the prison guards who placed him in the cell commented that this is what he gets when he is a gang member, and that Defendant Guerin admitted to "screw[ing] up" by placing him in the cell. Id. ¶ 23. Some, but not all, of Plaintiff's injuries were photographed. Id. ¶ 24. Sometime in January 2013, Plaintiff's hand and back were x-rayed. Id. ¶ 25. Plaintiff was eventually given motrin and physical therapy. Id. ¶ 26, 27. Plaintiff alleges that he complained that the motrin was ineffective and repeatedly requested further testing or treatment, and that his complaints were dismissed by medical personnel. Id. ¶¶ 25–26.

On October 13, 2013, Plaintiff was released from prison. Am. Compl. ¶ 28. Upon release, he sought medical attention "for his ongoing pain, immobility, and lack of sleep and appetite." Id. ¶ 28. He had an MRI. Id. On March 27, 2014, Plaintiff was rearrested and is currently serving a five-year sentence at SBCC. Id. ¶ 29. Plaintiff alleges that he "continues to suffer pain, lack of mobility, sleeplessness, appetite loss, depression and anxiety because of the memories of the

December 24, 2012 attack," but that his requests for medical attention "go ignored." Am. Compl. ¶¶ 29, 30.

Specifically with respect to Defendant Goden, Plaintiff alleges that he is or was an "Inner Perimeter Security" officer during the relevant time period. Am. Compl. ¶ 8. He is "responsible for preventing the intermingling of opposing gang members at SBCC" by investigating affiliations and communicating them to relevant personnel. Id. With respect to Defendant Guerin, Plaintiff alleges that he was the Shift Commander responsible for moving prisoners on December 24, 2012 between 7 am and 3 pm. Id. ¶ 9. He ordered Plaintiff's relocation to the new cell and apparently was responsible for his "Awaiting Action" status.[2] Id. Plaintiff is suing both Defendants Guerin and Goden in their individual and official capacities. Id. at ¶¶ 8, 9.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). "The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint." Young v. Lepone, 305 F.3d 1, 10– 11 (1st Cir. 2002). Although detailed factual allegations are not required, a pleading must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a Complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."

---

[2] Plaintiff does not explain what exactly "Awaiting Action" status signified.

Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). Further, the facts alleged, when taken together, must be sufficient to "'state a claim to relief that is plausible on its face.'" A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

The First Circuit has noted that "[t]he plausibility standard invites a two-step pavane." Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citation omitted).

Because Plaintiff filed his Complaint *pro se*, the Court will construe his allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, *pro se* status does not insulate a party from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Admin. Hosp., No. 11-10510, 2013 WL

702766, at *3 (D. Mass. Feb. 25, 2013) (citing <u>Overton v. Torruella</u>, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "'is subject to the same standard of review' as a motion to dismiss under Rule 12(b)(6)." <u>Breda v. McDonald</u>, 153 F. Supp. 3d 496, 499 (D. Mass. 2015) (citing <u>Castino v. Town of Great Barrington</u>, 13-30057, 2013 WL 6383020, at *1 (D. Mass. Dec. 4, 2013)). Courts may, however, consider evidence outside the pleadings in determining jurisdiction. <u>Gonzalez v. United States</u>, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

Finally, "[t]he district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" <u>DeGrandis v. Children's Hosp. Boston</u>, 806 F.3d 13, 16–17 (1st Cir. 2015) (quoting <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir.1998)).

## III.  DISCUSSION

### a.  Plaintiff's Claims Are Not Time-Barred.

Defendants first argue that Plaintiff's § 1983 claims are time-barred. Defendants and Plaintiff agree that § 1983 actions are subject to a three-year statute of limitations. <u>See</u> <u>Nieves v. McSweeney</u>, 241 F.3d 46, 52–53 (1st Cir. 2001) (federal civil rights cases filed in Massachusetts are subject to a three-year statute of limitations). They also agree that the statute of limitations began to run on all claims on the date of Plaintiff was attacked, *i.e.*, December 24, 2012. Thus, the statute of limitations expired on December 24, 2015. The Plaintiff and Defendants disagree, however, as to what date the action was filed.

In this case, the § 1983 claims were deemed filed on the day Plaintiff submitted the initial complaint to prison authorities for mailing, which he avers in his opposition brief was December 21, 2015. [ECF No. 61 at 6]. "[T]he mailbox rule shall govern the determination of when a prisoner's § 1983 filing has been completed. So long as the prisoner complies with the prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities." Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002). The initial complaint itself is dated December 21, 2015. Defendants have not disputed that this is the date Plaintiff submitted the complaint to prison authorities or that he followed prison mail procedure. See Ward v. Bellotti, No. 13-12054, 2014 WL 4656593, at *4 (D. Mass. Sept. 15, 2014) ("If [the plaintiff] produces unrebutted evidence to support that date, then he filed his federal claim prior to the expiration of the statute of limitations."). Accordingly, Plaintiff's § 1983 claims are not time-barred.

It is less clear whether Plaintiff's state law claims are time-barred. Under Massachusetts law, Plaintiff asserts only a negligence claim for failure to protect. See Am. Compl. ¶ 1. Massachusetts appellate courts have not decided whether the prison mailbox rule applies to civil complaints. See Ward v. Bellotti, No. 13-12054, 2014 WL 4656593, at *4 (D. Mass. Sept. 15, 2014); see also Jackson v. Comm'r Of Correction, 2 N.E.3d 200 (Mass. App. Ct. 2014), review denied, 8 N.E.3d 279 (Mass. 2014) (declining to address the issue because the argument was waived below). Superior Court decisions seem to be in tension with each other on the issue. Compare Haas v. Spencer, No. WOCV201101399, 2012 WL 7017165, at *9 (Mass. Super. Dec. 11, 2012) (applying prison mailbox rule to filing of civil complaint) with Tibbs v. Dipalo, No. CA991509, 2000 WL 1273854, at *4 (Mass. Super. Mar. 21, 2000) (declining to apply prison

mailbox rule to filing of complaint that included § 1983 claim). The Massachusetts Supreme

Judicial Court, however, has adopted the mailbox rule for determining when an inmate has

effectively filed a notice of appeal. See Commonwealth v. Hartsgrove, 553 N.E.2d 1299, 1302

(Mass. 1990). Recognizing that inmates cede control over filings once they hand them over to

prison personnel and given the vagaries of the prison mail system, the Court finds the mailbox

rule to be the fairest rule to apply in this case. See, e.g., Ward, 2014 WL 4656593, at *4 ("The

Court finds the rulings applying the mailbox rule more persuasive and, therefore, applies the rule

to Ward's pendent tort claims."). Accordingly, applying the mailbox rule, Plaintiff's state law

claims are also not time-barred.

### b. The Eleventh Amendment Bars Claims Against Defendants In Their Official Capacities.

The Eleventh Amendment bars suits in federal court against a state without its consent.

Will v. Michigan Dept. of State Police, 491 U.S. 58, 70–71 (1989) (holding that Congress did not

abrogate state's sovereign immunity in § 1983 suits). Eleventh Amendment immunity extends to

suits against state officials being sued in their official capacity, Kentucky v. Graham, 473 U.S.

159, 166 (1985); see also Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (per curiam), but

not in their individual capacity, Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002). The

Eleventh Amendment also applies to the Massachusetts Department of Correction because it is

an "arm of the state." See Caisse, 346 F.3d at 218 (holding that negligence claims against

Department of Correction officials in their official capacity "will not survive Eleventh

Amendment scrutiny"); see also Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92,

99–100 (1st Cir. 2002) (holding that the Lottery Commission is an "arm of the state").

Furthermore, the Supreme Court has specifically held that the Eleventh Amendment bars district

courts from hearing pendent state law claims against state officers in federal court without the

state's consent. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984). Massachusetts has not waived its sovereign immunity from suit for state tort claims in federal court. <u>See</u> <u>Irwin v. Comm'r of the Dep't of Youth Servs.</u>, 448 N.E.2d 721, 727 (Mass. 1983) (holding that, upon certification from a court in the District of Massachusetts, the Massachusetts Torts Claims Act, G.L. c. 258, § 1 *et seq.*, is "neither an express nor a necessarily implicit consent by the Commonwealth to suit in Federal courts."). Finally, while requesting prospective injunctive relief may provide an exception to the Eleventh Amendment, <u>Ex parte Young</u>, 209 U.S. 123 (1908), Plaintiff does not appear to be requesting an injunction in connection with any of the violations he alleges, <u>see</u> Am. Compl. ¶¶ 1, 38B.

Therefore, Plaintiff's claims against the Defendants in their official capacities are dismissed, and the remainder of this Memorandum and Order focuses on any remaining claims brought against Defendants in their individual capacities. <u>See, e.g.</u>, <u>Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.</u>, 644 F.3d 5, 12 (1st Cir. 2011) (holding that plaintiff's claims, both § 1983 and state law, barred by Eleventh Amendment).

### c. Plaintiff Adequately Alleges Section 1983 Claim For Alleged Eighth Amendment Violation.

Section 1983 provides a cause of action for violations of the U.S. Constitution and federal law. 42 U.S.C. § 1983; <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief

shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To succeed under § 1983, a plaintiff needs to show that "[f]irst, the challenged conduct must be attributable to a person acting under color of state law (including Puerto Rico law); second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).

Plaintiff alleges that Defendants violated the Eighth Amendment by failing to protect him when they placed him in a cell surrounded by rival gang members, which led to his assault. See Am. Compl. ¶ 32. The Supreme Court laid out the framework for determining whether a prison official was constitutionally liable for a prisoner's injury at the hands of another prisoner in Farmer v. Brennan, 511 U.S. 825, 834 (1994).[3] Under Farmer, to succeed on an Eighth Amendment claim, Plaintiff must prove: "[f]irst, the deprivation alleged must be, objectively, sufficiently serious. For a claim based on failure to prevent harm, the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm. Second, the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 834) (further internal citations omitted). Furthermore, in a § 1983 case, vicarious liability is not available and "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). The First Circuit has held "[t]he requisite personal involvement of

---

[3] The First Circuit noted that Farmer "characterize[ed] 'the protection [a prisoner] is afforded against other inmates' as a 'condition of confinement.'" Giroux, 178 F.3d at 34 n.8 (quoting Farmer, 511 U.S. at 832 and citing Wilson v. Seiter, 501 U.S. 294, 303 (1991)).

a prison official may be established by showing that the official knew of a prisoner's personal danger yet failed to provide protection." Pinto, 737 F.2d at 132 (citing Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981)). However, personal liability cannot depend solely on "allegations of conditions beyond [a defendant's] personal control." Id. at 133. For purposes of their motion to dismiss, the Defendants argue only that Plaintiff failed to satisfy the second Farmer prong: that each Defendant possessed the requisite *subjective* mental state. [ECF No. 28 at 6].

"[O]nly 'deliberate indifference' by prison officials to an inmate's health or safety [i]s sufficient to establish [constitutional] liability." Burrell, 307 F.3d at 7. "Deliberate indifference" is more than mere negligence and akin to "criminal recklessness." Burrell, 307 F.3d at 8. To be deliberately indifferent, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. While Plaintiff need not allege that Defendants knew that the specific assault would happen, he must allege each Defendant had "knowledge of facts from which the official [could have drawn] the inference that a substantial risk of serious harm exist[ed]." Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 65 (1st Cir. 2002) (citing Farmer, 511 U.S. at 837).

Plaintiff adequately alleges in his Amended Complaint that Defendants Goden and Guerin had knowledge of the relevant surrounding circumstances, such that they could have drawn an inference that a substantial risk of harm existed. Plaintiff alleges that Defendant Guerin was responsible for moving Plaintiff to the new cell, Am. Compl. ¶ 9, and that Defendant Goden was in general responsible for investigating gang status and affiliation to ensure proper security in SBCC, id. ¶ 8. Plaintiff further alleges that Defendants Guerin and Goden knew that Plaintiff was a gang member by virtue of the fact that he was a "confirmed gang member." Id. ¶ 18.

Plaintiff asserts that Defendants Guerin and Goden knew that the prisoners in the neighboring cells were "confirmed members of a rival, opposing gang." Am. Compl. ¶ 18. He claims that Defendant Guerin was the Shift Commander that oversaw the shift during which Plaintiff was relocated, and that Defendant Guerin had specifically ordered for Plaintiff to be placed in the cell. See id. ¶¶ 9, 19. Plaintiff also implied that both Defendants knew that he was being relocated to a particular cell that shared recreation time with rival gang members. See id. ¶ 18. Furthermore, Plaintiff alleged that the rival gang members he was placed near were known to "attack on sight," id., and that Defendant Guerin admitted afterwards that Plaintiff should not have been placed in that cell, id. ¶ 23. Defendant Goden's role in the relocation can be inferred from the fact that Plaintiff alleges he was involved in SBCC security, particularly in ensuring that gangs were properly secured, and that he knew Plaintiff was a confirmed gang member and was being moved to a prison cell near confirmed, rival gang members. Moreover, Plaintiff claims that Defendant Goden "was responsible for preventing the intermingling of opposing gang members at SBCC." Id. ¶ 8. Accordingly, taking all of the facts as true and construing the pleading liberally, Plaintiff has sufficiently alleged that the Defendants were aware of the risk to him when he was relocated.

### d.  Qualified Immunity Is Not Available.

Defendants argue that they are entitled to qualified immunity because "Defendants did not violate Plaintiff's constitutional rights, let alone his clearly established constitutional rights," but they do not conduct the "clearly established law" analysis. [ECF No. 28 at 11]. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting

13

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. To determine whether a defendant is entitled to qualified immunity, a defendant must satisfy two prongs: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). As discussed above, Plaintiff has adequately alleged that there was a constitutional violation. See Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) ("The first prong of the immunity analysis requires that a plaintiff state a claim of violation of a constitutional right."). Under the qualified immunity doctrine, however, even if the facts alleged make out a constitutional violation, the right must have been "clearly established at the time of defendant's alleged violation" in order for a defendant to be liable. Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009) (quoting Maldonado, 568 F.3d at 269).

To determine if a constitutional right was clearly established (the second prong), "the court [must] decide (1) whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right,' and (2) whether in the specific context of the case, 'a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.'" Mosher, 589 F.3d at 493 (quoting Maldonado, 568 F.3d at 269). "The law is considered clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue."

14

Mosher, 589 F.3d at 493 (quoting Guillemard–Ginorio v. Contreras–Gomez, 585 F.3d 508, 527 (1st Cir. 2009)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002) ("fundamentally similar" or "materially similar" facts are not required for finding law to be clearly established). The Supreme Court, however, has cautioned that "clearly established law" should not be defined at a "high level of generality," and that the "dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" Mullinex v. Luna, 136 S. Ct. 305, 308 (2015) (emphasis in original) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).

Prior to the events at issue here, the law was clearly established that a prison official violated a constitutional right when he or she was deliberately indifferent to a substantial risk of harm to a prisoner, including violence inflicted by another prisoner. See Mosher, 589 F.3d at 493–94 (discussing constitutional violation in context of pre-trial detention); see also Farmer, 511 U.S. at 834. More specifically, it was clearly established law that prison officials were constitutionally required to "take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderón-Ortiz, 300 F.3d at 64; see also Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999); Ayala Serrano v. Gonzalez, 909 F.2d 8, 14 (1st Cir. 1990) ("[I]t is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of other prisoners" (citations and internal quotations omitted)). The First Circuit has vacated a summary judgment decision where "jail officials inexplicably introduced a person posing a known danger, another inmate who had repeatedly threatened [the plaintiff], into the holding cell where [the plaintiff] was being kept." Mosher, 589 F.3d at 494 (quoting Burrell, 307 F.3d at 9 and discussing Giroux, 178 F.3d at 30). Moreover, the First Circuit has held that "[w]hen a supervisory official is placed on actual notice of a prisoner's need for physical

protection or medical care, administrative negligence can rise to the level of deliberate indifference to or reckless disregard for a prisoner's safety." Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (quoting Layne, 657 F.2d at 471 (internal quotation marks omitted)). Thus, the contours of the right were sufficiently clear that a reasonable officer would have known that placing inmates together who posed a substantial risk of harm to each other violated the Eighth Amendment. See Maldonado, 568 F.3d at 269; see also Mosher, 589 F.3d at 493.

"Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Maldonado, 568 F.3d at 269 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam)). The Plaintiff has alleged here that the Defendants have done something nearly identical to the situation in Giroux, 178 F.3d at 32: they put Plaintiff and prisoners who were known dangers to him in an area where they would inevitably come into contact. As alleged, Defendants knew that Plaintiff was being placed in a dangerous situation when he was relocated. Thus, on "the particular facts of the case" here, it should have been "clear to a reasonable officer that his conduct was unlawful" in this particular situation. See Maldonado, 568 F.3d at 269. Therefore, Defendants are not entitled to qualified immunity. See Facey v. Dickhaut, 892 F. Supp. 2d 347, 359 (D. Mass. 2012) (holding that state prison officials who placed prisoner, known to be a gang member, in housing unit with rival gang members, who attacked him, were not entitled to qualified immunity).

**e. Plaintiff did not Adequately Allege the Section 1983 Claim for Fourteenth Amendment Violation.**

Plaintiff also alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment in connection with the December 24, 2012 attack. See Am. Compl. ¶ 34. It is

unclear what the basis of the claim is, but it seems to involve a failure to protect. A failure to protect claim brought by an inmate, however, is properly considered under the Eighth, rather than the Fourteenth, Amendment. "An inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection to inmates from attack by other inmates." Calderon-Ortiz, 300 F.3d at 63–64. The Supreme Court has explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (explaining the holding in Graham v. Connor, 490 U.S. 386, 394 (1989)). Moreover, in "the prison security context," "the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 327 (1986). Accordingly, Plaintiff has failed to sufficiently plead a separate Fourteenth Amendment Due Process violation against Defendants Goden and Guerin.

### f. Plaintiff did not Adequately Allege State law Negligence Claims Against the Defendants.

Plaintiff next alleges that Defendants were negligent under state law in failing to protect him. See Am. Compl. ¶¶ 1, 33. To the extent Plaintiff alleges negligence on the part of Defendants in their individual capacities, the claim is insufficiently pled. The Massachusetts Torts Claims Act, G.L. c. 258, immunizes public officials from liability for any "negligent or wrongful act or omission" committed "within the scope of his office or employment." Mass. Gen. L. ch. 258, § 2; see also Caisse, 346 F.3d at 218 ("[N]egligence claims against the Department of Corrections defendants in their individual capacities are barred because the Tort Claims Act shields public employees from personal liability for negligent conduct."). Plaintiff fails to allege anywhere that the acts or omissions complained of were committed outside the

scope of Defendants' employment or to plead any other facts that would make such a tort claim viable as a matter of law.

## IV.    CONCLUSION

Accordingly, Defendants' Motion to Dismiss [ECF No. 27] is <u>GRANTED IN PART and DENIED IN PART</u> with respect to Defendants Goden and Guerin. Specifically,

- The Motion to Dismiss is <u>GRANTED</u> with respect to all claims against Defendants in their official capacities.

- The Motion to Dismiss is <u>GRANTED</u> with respect to the Fourteenth Amendment claim against Defendants.

- The Motion to Dismiss is <u>DENIED</u> with respect to the Eighth Amendment claim against Defendants.

- To the extent that the motion was brought on behalf of parties who have not yet been served, the motion is <u>DENIED</u> without prejudice.

Defendants' second Motion to Dismiss [ECF No. 51] is <u>DENIED</u> as moot. All claims alleged in the Amended Complaint against Defendants, except the Eighth Amendment claim against Defendants in their official capacities, are hereby <u>DISMISSED</u>.

**So Ordered.**

Dated: December 8, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE
